**OTTINGER BROS. CONST. CO.**
v.
**UNITED STATES.**

No. 399-52.

United States Court of Claims.

June 8, 1954.

F. Hamilton Seeley, Washington, D. C., for plaintiff. J. Gerald Mayer, Scott G. Rigby, Washington, D. C., on the brief.

Francis X. Daly, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff sues for the difference in wages specified in a construction contract and those it alleges it actually paid to its employees. The basis of the complaint is that defendant was guilty of misrepresentation in the wage scale as

set forth in the Invitation to Bid and in the contract.

The specifications called for "construction of additions and alterations to the Ohio River Floodwall and the Cairo North Levee Wall at Cairo, Alexander County, Illinois."

The contract was dated July 5, 1946. Prior to its execution, on February 26, 1946, the War Department wrote the Department of Labor requesting a predetermination of the wage scale of some of the crafts that were to be used in the performance of the proposed contract.

In response to this request the Department of Labor set forth in its decision, dated March 15, 1946, what it had determined were the prevailing wage rates for the specified crafts, attaching a list of such crafts. The decision stated that it was made for the proposed contract under the provisions of the Davis-Bacon Act.[1]

On May 10, 1940, defendant issued its Invitation to Bid covering the proposed construction. Bids were opened June 20, 1946, and plaintiff's bid was accepted by letter dated July 5, 1946.

The rates set out in the Invitation to Bid and in the contract specifications were the rates predetermined by the Secretary of Labor under date of March 15, 1946. The plaintiff asserts that in reliance upon the Invitation to Bid, and specifically upon the recommendation of defendant as to the prevailing wage rates in the Cairo, Illinois, area, it submitted its bid; it further alleges that pursuant to a memorandum dated May 14, 1942, from the President of the United States, the Secretary of Labor, by administrative order filed July 28, 1942, established the Wage Adjustment Board and delegated authority to it to adjust approved wage rates in the building construction industry; that on April 4, 1946, the Wage Adjustment Board authorized increases in the prevailing wage rates in the Cairo, Illinois, area for certain job classifications in the building construction industry, and on May 23, 1946, the Board authorized a further increase, and that in attaching the list of prevailing wage rates under the order of March 15, 1946, the defendant had misrepresented the prevailing wage rates in the Cairo, Illinois, area, and that the plaintiff had relied on these representations to its damage.

Plaintiff filed a claim for damages with the contracting officer, who denied the claim. An appeal was taken to the Office of the Chief of Engineers, which, by its decision of May 29, 1951, denied the appeal. Plaintiff alleges that by reason of the misrepresentation it has sustained expense and losses in the amount of approximately $200,000.

An examination of the order of adjustment dated April 4, 1946, a copy of which is filed with the papers in the case, shows that the Wage Adjustment Board on that date authorized certain wage increases for members of unions affiliated with the International Brotherhood of Teamsters, Chauffeurs and Helpers to apply on non-Federal building, heavy and highway construction, effective the first full payroll after April 4, 1946, in a number of counties of Illinois, including Alexander, where Cairo is located. The decision of the Wage Stablization Board dated May 23, 1946, applied after that date to members of Carpenters Local Union No. 812, and stated that it applied only to non-Federal construction. These orders apparently were issued pursuant to applications for wage adjustments in connection with individual projects. A similar wage adjustment was authorized on June 14, 1946, applicable to unskilled common labor which applied in certain counties of Illinois, including Alexander.

The Davis-Bacon Act, supra, requires that contracts in excess of $2,000, to which the United States is a party, shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be de-

---

[1]. 49 Stat. 1011; 40 U.S.C.A. § 276a.

termined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the the contract work in the city, town, village or other civil subdivision of the State * * * in which the work is to be performed.

The contract specifications in the instant case contain the following:

"SC–11. Rates of Wages: (a) The minimum wages to be paid laborers and mechanics on this project, as determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of character similar to the contract work in the pertinent locality, are as set forth below."

The defendant contends that the prevailing wages as found by the Department of Labor under date of March 15, 1946, from which the list was taken, were not changed at any time prior to July 5, 1946, when plaintiff's bid was accepted; that the three instances of permitted or authorized change were in connection with individual contracts that involved non-Federal building or construction; that these orders did not find that the wages authorized in the particular instance were the prevailing wages in the area in question, and did not direct the contractors to pay the wages listed for the specified craft, but merely authorized their payment, and that the mere authorization of increased wages in the three individual non-Federal contracts did not constitute a change in the finding as to the prevailing wage rate.

A very similar question to the one involved here was decided by the United States Supreme Court in the case of United States v. Binghamton Construction Co., Inc., 347 U.S. 171, 74 S.Ct. 438, 439. We quote from that opinion as follows:

" * * * The question presented is whether the schedule of minimum wage rates included in a Government construction contract, as re-

quired by the Davis-Bacon Act [citing it] is a representation or warranty as to the prevailing wage rates in the contract area. We hold that it is not.

"The Davis-Bacon act requires that the wages of workmen on a Government construction project shall be 'not less' than the 'minimum wages' specified in a schedule furnished by the Secretary of Labor. The schedule 'shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing' for corresponding work on similar projects in the area. * * * The Act also provides for penalties, including termination of the contract, if it is found that the contractor is paying less than the schedule rate.

＊　＊　＊　＊　＊　＊

" * * * On its face, the Act is a minimum wage law designed for the benefit of construction workers. The Act does not authorize or contemplate any assurance to a successful bidder that the specified minima will in fact be the prevailing rates. Indeed, its requirement that the contractor pay 'not less' than the specified minima presupposes the possibility that the contractor may have to pay higher rates. Under these circumstances, even assuming a representation by the Government as to the prevailing rate, respondent's reliance on the representation in computing its bid cannot be said to have been justified."

In the light of this decision by the highest court in the land, it would be a waste of time to both the court and the litigants to refer the case to a commissioner for a further hearing of evidence and finding of facts. The documents that are attached and filed with the papers in the case, including affidavits, orders, the contract and specifications, show that the issues come within the purview of the decision by the Supreme Court in the Binghamton case.

On the basis of that decision plaintiff's motion for summary judgment is denied, and the defendant's motion is granted. Plaintiff's petition is dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.